Our fifth case for this morning is United States v. Oliver. Mr. Hillis. Dan Hillis May it please the Court, Counsel. My name is Dan Hillis. I'm with the Federal Public Defender's Office. I represent Travis Oliver on this appeal. He raises four issues. The first is that the District Court procedurally erred by not addressing the need to avoid unwarranted sentencing disparities, which of course is a statutorily required factor for the District Court to consider, and the information that is relevant to this came in through the government. But that doesn't take away the need to consider it by the District Court. Why did the District Court have to regard Watson as so similar to Oliver that this unwarranted disparity, stress on the word unwarranted, but unwarranted disparity rule is triggered? I mean the District Court's well aware of Watson, understands what Watson's doing, understands what Oliver's in a different situation, yet Oliver's still, you know, essentially a million dollar Ponzi scheme. So it's a serious crime. It is indeed. It is serious. But the District Court wasn't especially aware of the facts because they weren't included in the information that was originally tendered. So the District Court... But then they come out, right? On the fly, they do. And so the District Court is trying to make an assessment in a fairly hurried fashion. And if you'd consider it, and they're not related conspiracies exactly, but if they, excuse me, they're not related crimes exactly, but if you were to consider it as people who were engaged in the same types of offenses and one is related to another, I think that you would naturally... What's the difference? I mean it does happen that some of the people in Oliver's operation wanted to get their money invested in what I'll call the Watson or the CFF operation. But a lot of people didn't. I mean that seems kind of incidental to me almost. And unfortunately there are Ponzi schemes all over the country. And I don't understand you to be arguing that the judge had the responsibility to look all of them up and see about the sentencing. Right. And that would be unreasonable to request the District Court to do that. That's for the advocate to do. But once the information is before the court, the court must consider it and address it. And it is highly pertinent. If you have somebody who is much more responsible for a more egregious offense and they have greater losses and get a sentence of a certain type and we know that the other defendant is in a related fashion engaging in fraud and fraudulent proceeds are going to that other person who is much more culpable or his offense is more egregious, it should be considered by the District Court. It wouldn't have taken much for the District Court to consider it, but the District Court didn't and the record shows that. That's the procedural error. I'm not saying that the District Court cannot reason through this and say that the sentence should still be 51 months, but it's a necessary congressionally mandated factor. Turning to the second issue then, the judge procedurally erred by sentencing Mr. Oliver on the incorrect belief that his offense caused a lessened life expectancy for the victims. No, that's hyperbole. You know that he didn't really mean that. I only know what he said, Judge. And the judge did say that you took years off of people's lives. And first of all, there was a little bit of evidence about that, but even if there wasn't, took years off their lives and the judge is just commenting that this is a very consequential crime. He's got testimony from a couple of victims. People are talking about their parents giving them life savings that are now destroyed and so on. I sort of had a different aspect of this, but a rational adult would not necessarily take that as a literal statement of an actuarial table. What Your Honor said by way of explanation for what had happened would be entirely appropriate for the District Court to say that about the severity of the offense, the difficulty that it caused people. But if the District Court labored under the misbelief that somebody actually died or had a diminished life expectancy years off their lives as a result of this, that's the problem. And all I can do is take it face value where the District Court said this took years off people's lives. Insofar as the evidence that Your Honor mentioned, it doesn't show that that happened. It showed that somebody's life was made more difficult. How could you possibly show that? It's one of those things that even if somebody had a stroke a year after they found out about this, you would never be able to make a causation showing between the victimization and the stroke. It's not one of those things that's amenable to proof, which is why I think it's just a figure of speech. It's the government's burden. And so for the District Court to make a statement in assessing the severity of something, if the record doesn't support it and you can't show it, phrase it differently, but don't say this, because this is not amenable to proof. And you're right, Your Honor. So the District Court shouldn't treat it as a fact that implicates the sentence. And I can't think of anything that's more significant when you're handing out a sentence to say what you did has caused or may have caused somebody to have a shortened life. That's just something that the judge shouldn't have done. If it was a clumsy manner of expressing the severity of what had happened, that's fine. But I just have the bare record, as do you, and we don't know what the District Court said other than the words that are in their lives. And again, Your Honor's point is taken. That's not proven. Thirty years ago wouldn't have made any difference, would it? Yes. However, it makes a difference here, Your Honor. And so we think it's a basis for a remand. Another basis for a remand is the judge's failure to calculate the term of supervised release. And that was not done here. And so under Downs, that's reversible error. We think that that's fairly self-explanatory. And then finally, the judge erred by imposing the two-level enhancement for the leadership. And the judge did not make findings. They were in the PSR. Those findings that were adopted came from there. However, if we look at those in regard to the application note for 3B1.1, application note 4, Mr. Oliver didn't exercise decision-making authority over anyone. And that's a relevant factor. He did have responsibility for the defense, but he didn't involve others in that planning, such that they were in any way recruited. And in fact, he did not recruit Mr. Smith, who learned of the Electus investment through somebody entirely different from Mr. Oliver. So since he did not recruit anyone, that's another relevant factor here. And also, he had no control over Mr. Smith. Mr. Smith was out doing pitches on his own to potential making any control over this other individual. And if you were to take the PSR, and that's all we have here, and look at it, you'll find that it's lacking. And so under a plain error analysis, and that's where we're at because it wasn't objected to at the time of sentencing, we have a miscalculation of the guideline range. So there's an error that is plain. It affects the substantial rights because it causes the range to go higher. And then also, that affects the integrity of the judicial proceedings. In the event of a remand, which we hope to get here, the judge needs to make the necessary factual determinations. He didn't make them. The PSR is not adequate to support the enhancement. And so that, of course, is our additional reason to ask for a remand. I have nothing further than to ask the court's questions. Okay, that's fine. You can save the rest for rebuttal. Mr. Peterson. May it please the court. Joseph Peterson on behalf of the United States. It's the government's position that the judge did not commit any procedural error in sentencing the defendant to the 51 months and imprisoned in the three years of supervised release. So maybe we should start where Mr. Hillis ended, and that's with the manager, et cetera, enhancement. Your PSR says that Smith first learns about electus holdings through a different guy, Bruce Hongzermeyer. So how's that consistent with Oliver recruiting Smith? Well, after he learned about it through Hongzermeyer, he and Hongzermeyer went and specifically met with Oliver, and then Oliver laid out the investment scheme for Smith, and then Smith began selling the investments on behalf of Oliver. And it was the exact same scheme that Oliver had learned of with prior investors. It was a company called DLG that he invested money through with the exact same 1% guaranteed return. You can't lose your investment. You can withdraw your money at any time. And Smith had no idea about that investment until he had met with Oliver and then agreed to start selling those investments for him. So I guess it depends on what you think recruit means, because it's actually the other person, Hongzermeyer, who brings Smith into the operation. Maybe he likes what Oliver says later, but I guess the question is the meaning of recruitment. Correct, but in this case, the defendant didn't challenge the enhancement, so there was no hearing, no additional evidence presented in addition to the facts in the pre-sentence report to which the defendant did not object. The defendant did not object to the statement in the pre-sentence report that the defendant recruited Smith. And it's a sentencing... And Smith was the only one, or was he, remind me whether the PSR had other candidates that he recruited? Smith was the only other individual that sold investments, and then Oliver sold investments through Electus himself as well. So in addition, though, to the evidence of recruitment, there's also other evidence that Oliver did direct Smith to do certain things, specifically as to the method for soliciting the investors, which was crucial to get them to invest, because if the investors had known of the true nature of the investment, they would not have invested. That was the part of the scheme that made it successful, the fact that it was guaranteed and they could withdraw the money at any time. In addition... So the theory here is that Smith is the fast talker, and Oliver is somehow the brains behind the operation? Well, Oliver also recruited his own investors as well, but Smith had a network of individuals through his insurance business that he could try to recruit or try to solicit investors. In addition to that, Oliver also claimed a larger share of the proceeds. Smith received a total of approximately $60,000, and while we couldn't track every dollar, Oliver received hundreds of thousands of dollars of the investors' money, including...he would direct where the money would go then once it was received, either go to the other Ponzi scheme that he didn't know about, or he would pocket some of it, use it to pay for his own expenses. And as I stated earlier, he was the one that hatched the scheme and came up with the specific investment scheme to solicit the investors. So for all those reasons, we believe that the evidence in the record is more than sufficient to support the judge's finding for the two-level enhancement for his role in the offense. And unless there's any other questions on that, I could move on to one of the other issues. As to the supervisory lease, it's our position that the judge did calculate the term of supervisory lease. It was contained in the pre-sentence report. He adopts the PSR, right? Correct. And in addition to that, there was a memo filed by the parties regarding the specific terms of supervisory lease that the defendant only objected to certain conditions, but did not object to the guidelines range calculated in the pre-sentence report. In addition to that, when the judge imposed the term of supervisory lease, he imposed the maximum of three years, which was also the high end of the guidelines range. So the defendant has not articulated how this alleged error by the judge affected his sentence of supervisory lease in any way. Didn't the judge say something like, I want you to be under supervisory lease for a while so I can make sure you're living up to your restitution obligations? Correct. Towards that effect, yeah. Correct, but unlike the case the defendant cited, Downs, the range, the high end of the defendant hasn't articulated how a judge specifically stating the range is one to three years would have affected the sentence of supervisory lease. And then finally, as the last argument regarding the imposition, or I'm sorry, the district court's alleged failure to consider unwarded sentencing disparities, defendant has still not addressed how the fact that the judge imposed a sentence within the guideline range could create unnecessary sentencing disparities, which is what this court has held in numerous other cases. The judge did consider, it's our position that the... The ratio is quite different. If you look at what Watson was up to in his sentence, and then you look at Oliver, it is quite a different ratio. Correct, but that sentence may have created unwarranted sentencing disparities with other individuals as this defendant, and so maybe that sentence was the one that was improper, not this one, especially when this sentence was within the guidelines range. So unless there's any other questions, Your Honors, we would just ask that you affirm the sentence of the district court. Thank you. All right, thank you. Anything further, Mr. Hillis? Your Honor, for facts that are necessary to support the enhancement, those were limited to what is in the PSR. If there were additional facts that are in the record to support it, I don't know what those are, but insofar as they may have come from the government's version of the offense, that doesn't cut it. It needs to be a finding by the district court. We believe, it seems to me, it was much more limited than what the government explained as the supporting reasons for the enhancement. If there is a disparity problem and the other sentence is too high or this one's too low, the government says that maybe the other one was too high. The district court needs to... Not high enough, I think, is what they're saying. I think he meant the ups. I meant the... Watson got too much of a break, is what... Yeah, and maybe it's the case that he didn't, that Mr. Oliver didn't get enough of one. The point is, it's for the... I understand. That's the right way. The district court to explain that and to take into consideration what Watson got and what Mr. Oliver might get in fashioning what the appropriate sentence is. So far as the calculation supervised release, adopting the PSR isn't sufficient. We need an in-court calculation under Downs and to say the PSR says it correctly or the district court knows what the law is or what the statute says, that's all fine, but Downs requires an in-court calculation of that important thing, the number of years that you're going to be on supervision. And to say that you're on supervision so that you pay restitution, I point out to the court that the judge also said in the record, you're never going to pay this restitution. So then how is that... He was skeptical, I know. How is that as a valid reason to give the maximum period of supervised release when you say you're never going to do this thing? So to extend the supervised release and make it a maximum to do something that you say he's not going to do, seems like it's inconsistent with the purposes of supervised release. If you've got a valid reason, give it, but that doesn't pass muster. So I don't have anything additional unless the court has questions for me. All right. I don't think there's any, so thank you very much. Thanks to both counsel. We'll take the case under advisement.